Arguments not to exceed 15 minutes per side. Mr. Bursch, you may proceed for the appellant cross-appellate. Good morning, your honors. John Bursch on behalf of FedEx. I have reserved five minutes for rebuttal. May it please the court. FedEx appeals a $624,000 judgment for alleged employment retaliation. Plaintiff Cheryl Hubbell claims that FedEx engaged in a variety of retaliatory acts, but the district court correctly determined that the majority of those claims were not actionable under this court's precedence. It did that pursuant to the wrong standard. Would you agree with that? It didn't apply Burlington Northern in that determination. Is that fair? Can you elaborate on that? Are you talking about sort of the mistreatment, the scrutiny and all that? Yes, and he went religiously through this court's precedence. One of these other things, the watching, the write-ups, the safety violations. Through the court's precedence ending in 2006, correct? What was the first part of the question? Through the court's precedence ending in 2006. I'd have to look at his opinion. I'm not sure that that's correct. I mean, you're familiar with Burlington Northern. I am, of course, yes. Would you agree that the court did not apply the Burlington Northern standard in making the determination on summary judgment that you're referring to? Yeah, I don't believe that he cited Burlington Northern. I'm sorry? I don't believe that he relied on Burlington Northern. The standard he applied was not consistent with Burlington Northern. Is that correct? That's correct, yes. Okay. So it's wrong. It's potentially wrong. He applied the wrong standard. Correct, but two thoughts on that. First, that issue was never raised again in the district court. There was no motion for reconsideration on the summary judgment ruling. There was no attempt to ever resurrect those claims other than to introduce evidence at trial. But potentially you're asking us to take a determination by the wrong standard and quite possibly a wrong determination and use that somehow to reverse a potentially correct determination by the jury based upon the correct standard. Well, I think even on the Burlington Northern standard, these de minimis impacts on her working life were not to the level where they constituted materially adverse impacts such that they constitute employment retaliation. Okay, well, we could talk about that. Right. I don't want to totally interrupt your flow. Right. This wasn't an issue that we really briefed on the merits. And I guess what I would say. And that's what's concerning to me, counsel. You argue that the EEOC raised the correct standard for the first time. Correct. And that Ms. Hubble waived it. But isn't her law clear that she can't waive the correct standard of review? I think this. The law applies, right? Right, it does. But if a trial court makes a ruling and there's no challenge to that ruling, there's nothing for this court to review. Now, if you want to review those same acts de novo, then I would respectfully request an opportunity to issue a supplemental brief on that. Here's my struggle. You owe a duty of candor to this court. And the rules of professional responsibility say that if there is extant precedent that governs your case that is adverse to your client, it is your responsibility to bring it to the court's attention. So let's assume that Ms. Hubble's attorney missed it. You're not free to miss it. How is it that you did not point out Burlington Northern to the court? Your Honor, at the time that the ruling was made, none of the attorneys or the judge were talking about Burlington Northern. There was a ruling made. And so on appeal, my job is to defend what happened in the trial court and point out the errors where it's incorrect. How does that job relate to your duty of candor to the court and the requirements of the professional responsibility rules that govern your practice? Because, Your Honor, the issue of the summary judgment ruling wasn't even at issue on appeal. There was no cross appeal. There was no motion for reconsideration. You're talking about before the district court. I obviously wasn't in front of the district court. So I can't speak to what happened there with respect to who brought what law to the attention of the district court judge. If you can bring it, your brief stops in the case law of 2006 before this court. So help me understand your responsibility to this court. Before the EEOC came in and said this is the wrong law, you have a responsibility to tell this court what the right law is. Of course. And, Your Honor, I take that obligation very seriously. But I wasn't even looking at the question of what the proper law was applied to that summary judgment ruling because it hadn't been challenged. It was the law of the case. I was focused on the consequences of what happened once that ruling entered. Now, if you want to review this to no bone of that standard, we're happy to file a supplemental brief on that. If you want to remand it to the district court so he can reconsider. I don't think any of that's going to be necessary. Speaking for myself. What was I thinking of? I'm sorry. I forgot what I was thinking of. So go ahead. So we start. Perhaps what he's thinking of is the difference in the standard. What I was thinking, I remember what I was thinking of. I mean, along the lines of waiver, though, FedEx's counsel at trial never objects to the jury instruction. First of all, it doesn't, to my knowledge, object to the admission of the evidence, which, as you know, the court let in on grounds that it would show discriminatory intent. It was probative. Right, for count one. And there had been briefing on that, and we had lost that issue. Okay. And FedEx's counsel does not seek to circumscribe the jury's consideration of that evidence in any way. So, in other words, FedEx's counsel didn't say to the district court, at perhaps the instruction phase, what you're saying to us now, which makes me think maybe it's waived. Yeah, what the trial counsel said, both at the close of plaintiff's evidence, at the close of the proofs, and then again in the post-judgment motion, so three times, that these are the only claims in the case. This is the evidence that relates to those claims. We're entitled to judgment as a matter of law. We're not going to quibble with Your Honor, meaning the district court judge, with respect to your ruling, that this evidence that she originally tried to get in for these other purposes could not be relevant to count one. However, it's insufficient as a matter of law to establish her claims for retaliation under counts two or counts four. It was saying on the merits that this what I'll call bad treatment evidence, for lack of a better term, as opposed to the time clock stuff. Correct. That count two was just the time clock. If I may, that the bad treatment evidence, as a matter of law, did not rise to a materially adverse action. Is that what you're saying? I don't recall whether that phrase was used. I mean, did FedEx argue to the district court, this bad treatment evidence does not rise to a materially adverse action, Your Honor, as you said in your SJ order? Or did they say, judge, that stuff's out of the case for purposes of liability? Which one did they say? Without having it right in front of me, I believe the tenor of all three motions, and I know for certain the written motion that was post-judgment, was that the count two was limited by the prior ruling to the time clock theory. And so nothing else, no other evidence was relevant. I know that's your theory, but that's not the way the case went in, is the problem you have there. The way the evidence went in was under the judge's ruling on the motion in limine that all of this was relevant to the count one discrimination claim. And so there was nothing wrong with the admission of the evidence, per se, but there was something wrong with the judge's analysis of that evidence, given what he had already said about counts two and counts one. Yeah, but he applied the wrong standard. I mean, the problem you have, and the problem we would have, is you're asking us to take a ruling by which he applies the wrong standard and have that be kind of governing forevermore in the case, including here, notwithstanding the fact that all the evidence went into the jury, and so far as the instructions were concerned, they were able to give it plenary consideration. And yet, we're up here and we're bound by Judge Stee's, mistaken by all appearances, determination on that evidence in his SJ order. That seems like a very odd way for us to resolve the case. Well, it's the way that FedEx tried the case. That was the ruling that they had in front of them. And so if this court wanted to reexamine whether that evidence was cognizable retaliation, then I think we've got to go back and do it over so that FedEx would then be able to put on evidence and argue in opening and closing. You're almost out of time. On the time clock stuff, you argue in your brief that she testified that treatment began when she was demoted, which I think was in August. Correct, August. But if you look at her testimony, which we must view in the light most favorable to the jury's verdict, in one place she says it was after, after I was demoted, not when I was demoted, after, which obviously would encompass, which would allow a jury to look at her other testimony where she said it started in peak season, which starts in Thanksgiving, which is after the complaint. So I'm struggling to see how we can read the record in the way that you're asking us to. We also have the evidence, I believe it's the second EEOC complaint, which is not a basis for any of the claims that she makes in this case, in which she likewise indicated that the time clock change took place before. She did say that there. And so that was the basis for the district court's concern at summary judgment. He said, I'll allow you to clear up the timeline at trial. She does say that. She said it was around the time of her demotion. She says that in the second EEOC complaint. You're right about that. I guess the problem I have, you know the standard we're looking at. It's a difficult one. It is. It's tough for you. She testifies at trial, testimony as opposed to an EEOC complaint, that it was peak season, which is later. And if we're viewing this record in the light most favorable to the jury's determination, we had a jury trial here. It's not an SJ case where it's like, you know what, go back and give it more plenary consideration. If we're viewing it in that light, I mean, how do we disregard her testimony that it's peak season, and that it's after demotion, not contemporaneous with demotion? Respectfully, Judge Kethledge, if the best that she's got is that this happened around the time that I was demoted, and the time clock. That's what she said in the complaint. That's not what she said at trial. She said at trial, after demotion, number one. Number two, peak season. Agreed? She did. So why doesn't that govern here as opposed to, frankly, some ambiguous stuff, testimony, that I guess she gave on cross after demotion, just more vague. Why doesn't it govern over that and an unsworn EEOC complaint? Because we've got a three-month lapse between that demotion and when the first EEOC complaint is actually filed. If I have two events that happen in my life, say my birthday happens in August, and then I get a new job in November, and I say my child was born after my birthday, no one would think that I meant after November. There's got to be some recognition that when you're talking about something happening in proximity with an event that is three months away from another event, it's not a reasonable inference for a jury to draw that it happened after the event two months later. Why doesn't that allow them to infer a three-month gap, whereas maybe in other circumstances that wouldn't be such a great inference? Because she had already tied it to the demotion. And peak season kind of starts that way. I think it's a stretch. Okay. All right. You'll have your rebuttal. Thank you. Thanks. Good morning, Your Honors. Raymond Gazelle appearing on behalf of Ms. Hubble. May it please the Court. Good morning. The three-month lapse is not a three-month lapse, as stated by defense counsel, and I think I stated within the brief specifically that it was really simple math. It was closer to two months and not a three-month differential. So to clear up that factual math dispute, it's closer to two months. I did notice something in preparing for oral argument that FedEx had not objected to plaintiff's EEOC, second EEOC complaint being admitted at trial, and that was in the joint final pretrial order, document number 59, page ID 1539. It just sort of belts and suspenders in terms of what's already on the record, which is, Your Honors are correct, defendants didn't object to this evidence coming in. And I think one thing that is . . . Are you talking about the second complaint? The second complaint, correct. Does it matter for any purpose? Well, it does because there was a tidal wave of retaliation against my client after the second EEOC complaint and linked in time to certain adverse employment actions where she did actually lose money because she was sent home. You didn't make any claim based on the second complaint. You're nowhere at trial, right? I mean, your complaint doesn't say retaliation based on the second complaint. It does. Is that fair? No, it does specifically. I have the complaint with me. Okay, well, that's why we're here. If that's mistaken, please let us know. Sure, absolutely. The complaint says specifically, at paragraph number 44, Plaintiff filed another charge with the EEOC, Michigan Department of Civil Rights, against FedExSmart on or about March 10, 2014, alleging retaliation. This is document number 15. Does it say that FedEx retaliated in response to that particular complaint? Correct. That is page ID 80. And then I've cited, too, I have all the nice little tags here, where it goes through each paragraph and talks about the retaliation after that EEOC complaint. It goes into the dates, it goes into the details, and many of the details, which my client has testified to. And so that is an issue on Plaintiff's side. And all of that evidence was proven. And that tidal wave came after that EEOC complaint. And so there's a separate link. Not just the first EEOC complaint, there's also the second EEOC complaint. And then there was her filing of the lawsuit and then her termination, which followed two months later. I didn't see any affirmative evidence at all that anyone other than, I think, the lawyer person at FedEx who was served with the suit, that any of the actors here knew about the lawsuit. Chris Jensen did. Chris Jensen had a conversation with Mr. Blackshur. I didn't really read him to say that. He basically said, well, I guess I wouldn't disagree with Mr. Blackshur if that's what he said. Well, first he said he didn't know about the lawsuit. Then he changed his mind and says, well, I don't know. And then I asked him about the conversation he had with Mr. Blackshur because I spoke with Mr. Blackshur and he did have the conversation with him. Mr. Blackshur didn't testify at trial. I guess the conspicuous omission here is the testimony of Mr. Blackshur. He didn't testify. And we've got one guy who's like, you know, I don't remember it. And then, okay, well, I guess I wouldn't argue with Rob. That's not much to rest a verdict on. We've cited to about ten instances where Mr. Jensen testified differently from his deposition transcript to his trial transcript. And I had to walk up to him about ten times and I cited to each time that occurred on the record and cited to those pages. Coupled with the fact that the other manager, Oselnick, testified that he didn't know about Ms. Hubble's EEOC complaint. And then later, when I showed him his signature upon one of the documents that he drafted, Ms. Hubble indicated this is in retaliation for filing my EEOC complaint. So he lied to the jury as well. You know, there's a difference between substantive evidence and just impeachment. And I think what you describe in your brief and what you're describing now is impeachment of testimony that two guys didn't know. But it's not really substantive testimony that they did know. You bore the burden. I mean, I don't want to belabor it. I just, why didn't you have Blackshur? I mean, I don't mean to get in your trial strategy, but it seems strange that Blackshur didn't testify. Mr. Blackshur was in fear of being retaliated against because he still worked there and he didn't want to testify. Okay. And so we didn't bring him to his deposition. I understand the distinction that there's little evidence on the knowledge of the filing of the complaint. But the way the jury was charged and the way the evidence was presented was based on either or both of the EEOC discrimination based on the filing of the EEOC claim or on the filing of the lawsuit. Correct. So tell us what your best evidence is that there was this kind of discrimination and retaliation for either the EEOC complaint or complaints or the lawsuit. Since that's how the jury considered it. Sure. I can't tell you, I can't answer that question as to the best evidence. All I can say is that I listed the best evidence and all the evidence as best I could within the trial brief itself and highlighted and outlined and cited. I would be here for days reading that to you. So it's not. What comes to mind, you know, we're struggling with some of Ms. Hubble's testimony, but weren't there other witnesses? Well, there were several other witnesses testifying that they treated Ms. Hubble like a dog and she went through hell. Mr. Massey testified that they targeted her after she filed her first EEOC complaint by making him watch only her. And that was it. She wasn't allowed to do anything without even going to the bathroom. I think that was the testimony. So there was a targeting right after her first EEOC complaint, right within that time frame. And then when Ms. Hubble spoke to Lauren Fishwick about her filing the first EEOC complaint, a few days later she was disciplined because Ms. Fishwick reported that to the Human Resources Department. And so you've got a tremendous link. Is that the email document? Correct. That was entered in the evidence? Correct. That is correct, Your Honor. And so that is a two-day link right there. And then Ms. Hubble detailed the retaliation that followed in terms of her being watched more closely in terms of the discipline, in terms of the doctor's notes where FedEx submitted the exhibit and didn't attach the doctor's note, whereas we did. And Mr. McLaughlin testified even that she shouldn't have been disciplined because she had a doctor's note. So their own witness testified she should not have been disciplined. When was that? When did that happen? That happened after the second EEOC complaint. Okay. After the second EEOC complaint. And I know there are a lot of facts in here, and I tried to detail them as best I could in numerical paragraphs on pages, I think, 12 through 18 of the brief itself. And I specifically mentioned Mr. McLaughlin and the timeline there. And Your Honors hit the exact testimony in regards to the peak season, which is accurate. She testified it was around peak season. FedEx admitted at trial that that's around Thanksgiving or Christmastime. And so it happened approximately three weeks after her first EEOC complaint. That's how it went to the jury. So I think the court is very accurate on that timeline. What was the date of the first EEOC complaint? The first EEOC complaint is dated November 7, 2013. And that's listed at page 16 of our brief. The second complaint was March 10, 2014. Thank you. Sure. And then within 60 days, April 23, Ms. Hubbell was disciplined, and then she was sent home early by management. And her peers continued to work, causing her to lose money. And then there was another instance where everybody was sent home except Ms. Hubbell, and she was the only one working at that time. And that happened again after the second EEOC complaint. So there's a plethora of retaliation that occurred in this case. In regards to the attorney fee issue briefly, as I understand I'm not going to have rebuttal time, the trial court stated that the defendants did not articulate a challenge to plaintiff's request for attorney fees or costs or interest. And that is correct. And so I cited the case law where no objection is made, the amount requested is normally approved, and Judge Stee has made those decisions in the past. He's not bound by what the parties say. I mean, when he enters an order, he has discretion to use his own judgment about what's appropriate. The best I can ask for, and I think any United States citizen can ask for in this country, is consistency not only by a judge but by the courts itself. I mean, if there's ever an issue for ad hoc determination, it's attorney's fees. In terms of the number, I mean, you do cite other cases, but those are different cases. And he looked at the specific facts here. He made a judgment about what he thought was reasonable in terms of the rate, in terms of the hours. He thought some work might have been duplicative. The problem is he didn't. Easy to distinguish prior cases in this area. He didn't follow Michigan law. How does Michigan law have anything to do with this determination? Maybe I'm missing something. Sure. I cited to the cases in regards to Michigan law being followed. This is a federal claim, right? Sure. Well, it's a federal and state claim. You won on your Title VII claim. Or did you win on both? Both. Okay. Both. Title VII is the fee shifting, isn't it? What? Title VII is what entitled you to fees. Is that right? Well, Title VII entitles to fees under $300,000. We met the cap. And the additional money past that was under state law. Her lost wages, past, future, and present lost wages. The cap was for punitives. But anyway, that's okay. You go ahead and argue what you want to argue. Sure. For sure. So the issue is the court did not abide by state law. Cited to the state law. I cited to this court stating that the court must abide by state law. I cited to the case of Pergoo, I believe, that this court stated Judge Stee should follow. One of the major issues, we talked about this, and we had a few settlement conferences with Judge Stee on two separate days. And he did mention this specific case, which was the $3,200 verdict, trial verdict. And he told us, look, I've had this $3,200 verdict, but I had to reduce the fees because it was just $3,200. So he emphasized that. In this case, we're above the cap. Well above the cap. And so when you have excellent results, you should receive your full compensation. We cited to that case law. The amount of time that we spent on this case that we billed was less than what we put into the billing itself. But second of all, the billing was appropriate in terms of listing trial preparation. But then we also defined what trial preparation was and then asked if the court wasn't satisfied to let us know. The court did not. The court submitted an order. We filed a detailed, more detailed than anything else Judge Stee had ever dealt with. And the court didn't even address it. And so when you take these cases on a contingency fee basis, you take a risk as a lawyer. I mean, you do. You never know what's going to happen in a court of law. You don't know if you're going to win or you're going to lose. But when you get to this point and you've done all the work and you're cut down 60% It was 35%. That's part of the risk one takes, I suppose. A district judge is going to make a determination. Sure. I understand it. But the problem is he reduced the $3,200 trial verdict by 20% and reduced the $519,000 trial verdict that we had by 35%. Almost double. It's unconscionable is what it is. I mean, you can't do that. In particular when the detail was there. Your unconscionability is by comparison to this other case as though that bound him to an upper limit of 20% reduction or something? It's unconscionable in regards to the specific cases that Judge Stee has dealt with himself. Correct. Unconscionable in regards to the law that we've cited in terms of having to follow state law. The second part I understand. The first part, you're saying that there's horizontal stare decisis on this type of an abusive discretion motion? I don't know if I would say horizontal. That is within the same court. In this case within the same person. That's what horizontal stare decisis means. The argument is Judge Stee was clearly not consistent in his rulings and so we pointed that out. We're reviewing this case. I mean, we're not bound by Judge Stee's determinations in other cases either. It may not get you very far, the other case argument with Judge Stee. Okay. Yeah, I'm sorry. I don't know what else to go off of other than the actual law that we've cited. I mean, that's why I cited to Judge Stee's prior cases. Because if he's going to follow the law in those cases, just follow the law in this case. Be consistent. Follow the law. It's a pretty extraordinary thing to say a district court acted unconscionably. Really, that's a very, very tall statement. A $3,200 verdict and a 20% reduction versus a $519,000 and a 35% reduction. When those billable hours are accurate, they're accurate. I mean, I understand, we understand your argument and we understand that it's an important issue. Very important. And rest assured, I mean, we've got the red light. It's $150,000 difference. That's a lot of money by any standard. Yeah. Believe me, we get that. Thank you very much. Okay. We'll hear a rebuttal. Thank you, Your Honors. I just wanted to clarify a couple things now that I've got some documents in front of me. First, I went back and I looked at Judge Stee's summary judgment ruling. And obviously, I don't have the ability to look through the cases that he cited. But in this very holding where he says that these other de minimis things were not actionable retaliatory conduct at page 29, he does cite one of this court's decisions in 2013. Now, I don't know whether that has the Burlington Northern standard or not. But again, looking at this from the perspective of the parties and the way this case was tried, it would appear that he was relying on law that was up to date and relevant at the time. No one else brought that to the attention of the court. And the whole case was tried on the basis that this summary judgment ruling bound the jury. Your argument assumes that the standard of review can be waived. And that is incorrect as a matter of law, is it not? I think that's correct. But if that's the case and you independently think that even under the Burlington standard, you know, these things might cross that line, I think the appropriate thing to do is to go back and give FedEx an opportunity to try the case on that basis. Because you had an opportunity to put the correct law in your first brief and you did not. So why should this court open that door again and now allow you to enter a completely new argument under the correct standard that you should have known and should have told to the court when you presented your opening brief? Your Honor, we weren't focused on the standard that he was applying at the summary judgment stage. We were accepting that ruling and looking at the natural consequences of that. And I apologize if you feel that we did something improper, because clearly that was not the intent or the goal. But we were taking the case as we found it. And the case had carved out a significant piece of these allegations and said as a matter of law they were not actionable. And then the district court was not applying that ruling later on in the proceedings. That's what we were focused on. If we read the record to allow the jury to find that the time clock treatment started in Thanksgiving, that's a basis to uphold. It makes it irrelevant. So that's my second point. Well, I mean, that would be a basis to uphold the verdict. It would. Then you wouldn't have to get into this morass of whether he applied the correct standard or not. So I went back and I looked at her testimony. And these are the same pages that we cited to you on page 21 of our brief, 106 to 107. And the question from her counsel, did anybody tell you that you were not allowed to work, I'm sorry, you were not allowed in the area before or after you clocked in and out at FedEx after you were demoted? And then she says, yes, John McLaughlin sent me an e-mail telling me that I could not clock in, only three minutes prior to the start of work, comma. And after I was demoted at some point, Chris Jensen and Vivian Carey told me not to work more than eight hours. And so the testimony that she gave relative to what happened after demotion had to do with not working more than eight hours. I think the only reasonable inference from this testimony is that at or before the time that she was demoted, she had been instructed by Mr. McLaughlin not to clock in and out. Well, I mean, what do we do with the peak season? She just misspoke there? I mean, that's a little more straightforward than sort of parsing, you know, the restrictive and non-restrictive clauses in a sentence of somebody at trial. Well, except peak season kind of extends throughout that whole fall period. Do you have any testimony at record site to that effect? We don't have any testimony other than hers as to when the peak season is. I thought she said Thanksgiving. I mean, I thought that was kind of common ground at trial, that FedEx agreed it was Thanksgiving through Christmas. Right, and the problem is you can't pin testimony that's as broad as that with an EEOC complaint that was filed in November and say whether it happened before or after. So what you've got is her previous testimony where she ties it to demotion. What case can the jury do that? I don't think a jury reasonably looking at this question and her answering, at the time of demotion I had the time clock email, and sometime after that I was told no more than eight hours. And reasonably conclude, even regarding the peak season. What about the other evidence in the record? Is it your position that nothing can be considered by this court except for that one issue of the time clock? Do you retain that position in light of the application of correct law, Burlingham Northern? I think we could have a good argument about whether some of these write-ups that she had and looking at the floor and things like that even satisfied the Burlington Northern standard. So let me understand that. So you have independent testimony in the record from a security guard that she was the only employee whose comings and goings he was told to track, and he was told to track her going to the bathroom. You have Alphonse Reed testifying that she was the only employee he could not talk to because managers were constantly watching her. The testimony that she was subject to numerous disciplinary write-ups, that she was written up for unexcused absences when your own witness said that she had a doctor's note to cover those, that she had three disciplinary write-ups within two months of filing her first EEOC complaint, one merely four days after that complaint. It's your position that that doesn't meet Burlingham's standard of materially adverse, which let me make sure I've got it straight, might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Is that your position? I think that's the accurate standard. I think you quoted it from Burlington Northern exactly correct. I think when you look at the evidence as a whole, there's obviously contradictory evidence about all those things, about her chronic absenteeism. The jury, the finder of fact, gets to make that determination, and you have to show that your Rule 50 standard, that viewing the evidence and the like most favorable to Hubble's jury decision, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in your favor. That's the standard. But here's the problem, Judge Strange, and why I suggest that a remand would be the most appropriate thing, because this case wasn't tried under the Burlington standard that you just articulated, as we all recognize. It was tried under the summary judgment ruling that Judge Stee issued. If the court incorrectly determined the law and then at trial allowed all that evidence before the jury, which it did, then that evidence is before this court under the Burlington Northern standard. Right, but here's the problem, Your Honor. FedEx's trial counsel never had the opportunity to make to the jury the arguments about the very evidence that you're discussing. We're all asking what could the jury have concluded based on the evidence that was in the record, which is an appropriate standard. But the case wasn't tried based on that. If you look, well, we have a problem here too. Cases are there. Supreme Court cases are not hard to find. Correct. But at some point counsel has an obligation to go find the cases. We're not going to set aside a jury verdict and remand because somebody didn't find a patently applicable Supreme Court case. Can you talk about a blown call on that? Both sides and the judge were all proceeding on one basis. If they had known the standard, surely and closed the argument. Nobody knows the standard in this case until the EEOC shows up? The point I'm trying to make is that if anybody had brought it to anybody's attention, surely trial court's counsel would have then argued to the jury why the very evidence that you're talking about, in conflict with other evidence, doesn't satisfy the Burlington Northern standard. Whose job is that? That was trial counsel's job and that was your job. And so that's what is before the court. If trial counsel failed to adhere to the requirements of work or failed to adhere to the requirements of the Board of Professional Responsibility, then the consequences that flow from that flow from that failure. I'm confident that trial counsel was not disregarding the rules of professional responsibility. I'm confident that as possibly Judge Stee did, although we have to look at that later case, and certainly as plaintiff's counsel did, it was just something that everybody missed. But if that's something that misses, it's just as much on the plaintiff's counsel as it is on the defense counsel. And the fair thing to do is to give everybody an opportunity to complete the case on a level playing field. Just real quick, Exhibit 183, as to punitives, I don't see anywhere in the record, and you would know the record better than I, where FedEx made any argument to the district court that that exhibit entitled FedEx to judgment as a matter of law on punitives. I don't see it mentioned at all. Well, as we explained in the reply brief, Exhibit 183 doesn't relate specifically to an investigation of the retaliation and discrimination charges that were brought here because those by FedEx policy would go to the legal department and so there was no testimony or documents for that attorney-client work privilege stuff. Exhibit 183 was introduced to demonstrate and argued again on appeal to show that FedEx does respond when complaints are made, at least in those situations where you have non-privileged materials. It seemed like that was more of a documentation than an investigation. Is that fair? No, because the person who did that document talked to both parties and as a result of that investigation, terminated the person who had made the aggressive acts towards Mrs. Hubbell. But you're talking about the complaint by Mrs. Hubbell that someone aggressively came to her. Correct, popped out the chest and was... That's not this claim. We understand that. That's why I explained in the reply brief that this document doesn't relate to the investigation of these complaints because those were done by the legal department. Our only point was that Exhibit 183 tends to show that when complaints were made, FedEx did spring into action. So her claim that FedEx didn't do anything when she made complaints was wrong. But there was testimony that no complaint was opened. I guess the terminology they used was they open a complaint if an employee complains about these sorts of things. Yes. And as I understand the record, and please correct me if I'm wrong, the testimony here from FedEx people was no complaint was opened. Not quite. The testimony was they were not aware that anything was opened because when a legal matter like this is raised. Who gave that testimony? I believe that was Ms. Barbara, what's her name? Benjamins. Yes, Benjamins. And she said... She would have known if it had been investigated. No, her testimony was that when an EEOC charge is filed, it goes to the legal department and the HR department doesn't have anything to do with it. So she wouldn't have any reason to know whether that investigation took place or not. And we don't have any testimony or evidence because of privilege and work product issues. But to answer Judge Keflin's question as clearly as I can, there's no affirmative evidence in the record that shows it did happen. All we have is the testimony that no one knows if it happened. But doesn't that shoot down your argument that you're entitled to judgment as a matter of law because the record shows good faith implementation. Not just having the policy, but it has to be implementation. I don't see how we have any evidence of implementation. Well, that's where Exhibit 183 comes in. It's some evidence that when complaints are made that are not processed by the legal department. We don't know whether there was a complaint opened in this case. And we don't know one way or the other. And, well, FedEx is your client. That was the responsibility to put it in if it was there. It wasn't put in the record. Sometimes as an appellate lawyer you wish you had done trial. You wish you had done trial. That's accurate. Yes. Well, all I can say is that the fact that FedEx had policies in place and was attempting to enforce them was recognized by the jury in their initial jury verdict when they concluded that FedEx had acted in good faith. All right. Very good. Thank you. Thank you both for your arguments. Clerk may call the next case.